JOHN BAMBRICK, Appellant, v. JAMES KING *et al.*,
Respondents.

St. Louis Court of Appeals, November 7, 1894.

1. **Mechanic's Lien**: MISDESCRIPTION OF PREMISES IN NOTICE OF
LIEN CLAIM. The partial misdescription of the premises affected will
not invalidate the notice of a lien claim given by a subcontractor to
the owner, if, on the rejection of it as surplusage, enough will be left
in the notice to identify the building sought to be charged, and
the owner could not have been misled.

2. ———: PRACTICE, APPELLATE. *Held*, in the course of discussion,
that the reversal by this court of the judgment in an action for the
enforcement of the mechanic's lien of a subcontractor annuls a per-
sonal recovery therein against the original contractor, but that a
retrial of the personal claim against the latter is not necessary when
the reversal is for error affecting only the lien.

*Appeal from the St. Louis City Circuit Court.*—HON.
JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*Nat C. Dryden* and *T. J. Rowe* for appellant.

*Lubke & Muench* and *Geo. W. Lubke, Jr.*, for
respondents.

ROMBAUER, P. J.—The only point presented for our
consideration is whether the trial court erred in reject-
ing a material man's notice of lien, which the plaintiff
offered in evidence. The rejection of the notice resulted
in a judgment against the plaintiff, as far as his lien
right was concerned. The paper is not in the record,
but sufficient appears therein to show what some of its
contents were, and the omission is entirely cured by an
admission of defendant's counsel in their statement

filed in this court, to the effect that the contents of the notice are accurately set out in plaintiff's statement.

The action is one by a material man against the subcontractors and owner. On the trial there was evidence tending to show the following facts bearing upon the admissibility of the rejected notice to wit: The defendant owner possessed only one lot on Westminster Place in the city of St. Louis, and had contracted with one Eysell to build a three story stone front house thereon. This contract was the only contract of any sort which the defendant owner had with Eysell. The owner admitted that he had reason to believe that the defendant subcontractors were doing the stone work on the house under a contract with Eysell. The lot on which the house was erected was lot number 27, in city block 5051 B., and had a front of fifty (50) feet on the north line of Westminster Place, by a depth of one hundred and fifty-five (155) feet to an alley, and was on the *west* side of King's Highway. The subcontractors sued were Casey & Brothers.

This testimony being offered in aid of the notice first, and it being shown that the notice was served in due time upon the owner, the plaintiff offered the notice itself in evidence, which, according to the admission above, was of the following tenor:

*"To James King, St. Louis, Mo.*

"Take Notice: That the undersigned, John Bambrick, holds a claim against your three story stone front house, situated on a certain lot of ground on the north side of Westminster Place, *and situated 1306 feet and 3 1-4 inches east of the east line of King's Highway*, and having a frontage of fifty feet on the north line of Westminster Place and a depth of 155 feet to an alley, and bounded as follows: On the south by Westminster Place, on the west by Issic P. Lusk, on the north by a fifteen foot alley, and on the east by Horates M. Spen-

cer, said lot being *numbered twenty-eight (28)*, in city block numbered 5051, in the city of St. Louis, state of Missouri, for materials furnished on and to the same by me at the instance and request and under contract and agreement with Ambrose Casey & Brothers, sub-contractors under Moritz Eysell, the original contractor for making the improvements for you; that said claim amounts to $168.65, and that the same is due to me from you, and accrued within four (4) months prior to the giving of this notice.

"And take further notice that, unless you pay the same within ten days from the date of service hereof, I will file my lien against said building and land upon which the same is situated, and proceed to recover the same according to law.

"JOHN BAMBRICK,
"By HENRY BATDORF, Agent."

For the purpose of noticing at a glance the objections made to the sufficiency of this notice, we have italicised such portions thereof as contain a false description of the lot. It is conceded that the house itself was correctly described. The question thus arising for decision is to be decided by the true answers to be given to the following queries: Is so much of the notice, as contains a correct description of the house and of the city block wherein it is situated, a sufficient compliance with the requirements of the statute, and can the false description be rejected as surplusage, or is the false description an essential part of the notice, and, if not essential, is it so misleading as to avoid the notice on that account?

The notice which the statute requires is one sufficient to inform the owner that the claimant holds "a claim against such building or improvement setting forth the amount, and from whom the same is due." The statute does not require that the land on which

the improvement is situated should be described, provided the notice is sufficient in other respects to identify the house or improvement. It must be noticed in this connection that there is a radical difference between the office which the notice performs under our statute, and the one which it performs under the statutes of some other states. The lien account filed, and not the notice, which is neither filed nor required to be filed, is with us the incipiency of the record evidence of a title acquired under a lienor. In many states the notice must be recorded, and forms the first link in the chain of record evidence. In such states the notice forms part of the lien account, and a material discrepancy between the description of the land contained in the notice and its description in the lien account, would be deemed fatal to the lien claim.

Now, in the case at bar, the notice describes the building against which the claim is held as a three story stone front building, situated on a lot of fifty feet front on the north side of Westminster Place, such lot having a depth of one hundred and fifty-five feet to an alley, and being in block 5051 in the city of St. Louis. It could not be contended that this notice would not have been sufficient had it stopped there, considering the conceded facts that the defendant had only one lot in block 5051, that this lot had a front of fifty (50) feet and a depth of one hundred and fifty-five (155) feet, that it fronted on the north side of Westminster Place, and that the house erected by him on said lot was a three story stone front house. The false location of the lot as being east of the east line of King's Highway, when in fact the lot was west of King's Highway, might be properly rejected as surplusage on the well known maxim, *Falsa demonstratio non nocet*. Thus in *Willamette Co. v. Kremer*, 94 Cal. 205, it was held that, where a claim of lien described

the lot upon which the building was erected as being lot *6* in block 28, and on the *southwest* corner of Hope and Eighth streets, while in point of fact part of the building was on lot *7* in the same block, and the building stood on the *northeast* instead of the southwest corner, the false description did not vitiate the claim, it appearing further that the building erected was the only one erected by the same owner at the intersection of the two streets. The court held that the mention of the block (as in this case) sufficiently identified the building, and the word "southwest" might be rejected as would be a false call in the deed. So, in *Springer v. Keyser*, 6 Wharton (Pa.), 187, the lot was described as on a certain street between *Vine* and James streets, while in point of fact it lay on that street between *Callowhill* and James streets, and the false description was rejected. The court said: "It is sufficient that the owner appears not to have had any other house in the particular street; for the claim could be applied to no other." See, also, *McNamee v. Rauck*, 128 Ind. 59. There are numerous decisions to the same effect, but we have selected these as being directly in point, and almost identical in their facts with the case at bar.

It results from the foregoing that, after it was shown that the owner had no other house on Westminster Place than the one in question, nor any other contract with Eysell than a contract for the building of this house, the court under the evidence erred in rejecting the lien notice offered in evidence. As this error was clearly prejudicial to the plaintiff, the judgment must be reversed. We will say in addition, as we have said heretofore, that the effect of a reversal of a judgment in a case like this is to reverse the entire judgment both as to contractor and owner, as there can be only one final judgment in a case, and the judgment against the owner of property is a mere

incident to the personal judgment on the debt, This, however, does not necessitate a retrial of the facts against the contractor, as the finding or verdict against him at the former trial remains undisturbed.

Judgment reversed and cause remanded. All concur.